UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LEIZA S. MCKENNA

VERSUS

SUMMIT CONSULTING, INC., ET AL

CIVIL ACTION

NO. 10-204-JJB-SCR

# RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion (doc. 22) for Summary Judgment. Plaintiff has filed an opposition (doc. 24) to which Defendants have filed a reply (doc. 25). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For the reasons stated herein, the Court GRANTS Defendants' motion.

## Background

### I. Facts

This case arises out of the allegedly discriminatory and retaliatory treatment of Plaintiff Leiza S. McKenna ("McKenna"), an African-American woman, by her employer. The following facts are undisputed.

In April 2007, McKenna began working as a Loss Control Consultant ("Consultant") for Defendant Summit Consulting, Inc. ("Summit") (doc. 22, ex. A). As a Consultant, McKenna assisted clients in evaluating and minimizing the risks associated with their businesses. McKenna worked from home and was required to visit clients at their places of business and to prepare written reports

1

memorializing her visits (doc. 22, ex. A).  Summit assigned McKenna to its Southwest Region where she served clients in and around the New Orleans area (doc. 22, ex. A).

In 2008, McKenna and other Summit Consultants began to have problems with Summit's Loss Control Manager for the Southwest Region, Paul Marks.[1]  On November 15, 2008, Summit's personnel managers and a handful of employees met to discuss complaints about Marks.  At the meeting, three of Summit's Consultants stated that they were generally frustrated with Marks' management style and that Marks often made women feel excluded.

In November 2008, McKenna gave birth and went on maternity leave, from which she returned in February 2009 (doc. 22, ex. C).  While McKenna was on maternity leave, Summit underwent a company-wide territorial reorganization—that is, it shuffled and reassigned many of its existing accounts among its Consultants (doc. 22, ex. C).  As a result, Marks reassigned one-third of McKenna's accounts to other employees, however, she suffered no change in title or diminution in salary (doc. 22, ex. C).  In addition, because McKenna's New Orleans clients were now located in closer proximity to one another, Marks increased the number of weekly visits McKenna was required to take from ten to fifteen (doc. 22, ex. E).  And as a result of the consolidation, McKenna was

---

[1] Specifically, McKenna alleges that Marks asked why she would return to work after having a baby and suggested that his wife would not return to work once she had a baby (doc. 22, ex. C).

unable to meet her monthly mileage requirements, and Summit subsequently confiscated her company vehicle (doc. 22, ex. E).

In early 2009, McKenna met with Marks for her 2008 performance review. Marks stated that McKenna had failed to meet many of the company's objectives, namely, that she failed to visit the minimum number of clients per week and failed to timely complete new account data surveys (doc. 22, ex. L). As a result, Marks rated McKenna as barely more than "minimally effective." In addition, on April 7, 2009, Jonathan Baughman ("Baughman"), Summit's Loss Control Supervisor, also notified McKenna that she had continually failed to meet with the minimum number of clients per week and had not timely completed her data surveys (doc. 22, ex. R). Around that time, Baughman also began to confront McKenna about allegedly inconsequential entries on her expense reports (doc. 24, ex. F).

McKenna thereafter filed a complaint against Marks and Baughman. Summit's Regional Vice President, Hank Chiles ("Chiles") made clear that Marks and Baughman could not require McKenna to meet with more clients than set-out in Summit's objectives, notwithstanding that her clients were clustered in a small area (doc. 22, ex. C). However, Chiles also informed McKenna that simply meeting Summit's minimum objectives would be reflected negatively in her performance reviews (doc. 22, ex. T).

Finally, on October 18, 2009, Summit announced that it would be terminating employees as part of a company-wide reduction. Due to financial concerns, Summit decided to shift its focus away from providing loss control

services to other services requiring fewer Consultants (doc. 22, ex. A). On December 18, 2009, Summit terminated McKenna and another female Consultant—the two lowest-scoring Consultants in the New Orleans area (doc. 22, ex. C). In all, Summit terminated seventy-two of its Consultants (doc. 22, ex. C). Since that time her accounts have been transferred to Consultants that were retained and her position has not been refilled (doc. 22, ex. A).

## II. Procedural History

On February 10, 2010, Plaintiff filed suit against Defendants Liberty Mutual, Inc. ("Liberty Mutual"), Summit, Marks and Baughman (doc. 1). Plaintiff asserts that (1) Summit and Liberty Mutual discriminated against her on the basis of her race and gender; (2) Summit and Liberty Mutual retaliated against her for taking maternity leave; and (3) Marks and Baughman intentionally caused Plaintiff to suffer emotional distress.

On April 29, 2011, Defendants filed their Motion (doc. 22) for Summary Judgment. Defendants assert that Plaintiff cannot establish a prima facie case of gender or race discrimination or that Defendants' conduct was sufficiently extreme and outrageous. Defendants also assert that Plaintiff was terminated because of her poor performance, not because she took maternity leave.

On May 20, 2011, Plaintiff filed her opposition (doc. 24). In her opposition, Plaintiff addresses only her intentional infliction of emotional distress and maternity leave retaliation claims. Plaintiff asserts that she has adequately demonstrated that she was terminated, at least in part, due to her taking

4

maternity leave.  However, Plaintiff fails to address Defendants' assertion that her claims for race and gender discrimination should be dismissed on summary judgment.

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law.  *Id.* at 321.  If the movant does so, in order to survive the motion for summary judgment, the nonmovant must show that a genuine issue of material fact remains for the factfinder to resolve.  *Id.* at 323.  In either case, the court must construe all facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A "genuine issue of material fact" exists only when a reasonable fact-finder could return a verdict in the nonmovant's favor.  *Id.* at 248.

## Discussion

## I. Race Discrimination Claim

Plaintiff asserts that Summit discriminated against her based on her race (doc. 1). Plaintiff cites the following acts of differing treatment: (1) she had to attend an irregularly scheduled performance evaluation despite the fact that other Consultants who received low ratings only had to attend their regularly scheduled monthly meetings; (2) Summit subjected her expense reports to greater scrutiny than other employees'; (3) Summit confiscated her company vehicle for falling short of her mileage requirements while another Caucasian employee was permitted to visit a customer in Arkansas to meet her requirements; and (4) terminated her despite that she had met the company's objectives.

Defendants assert that, other than her termination, the conduct of which Plaintiff complains cannot support a claim for race discrimination because complained-of acts were not "adverse employment decisions" (doc. 22). Defendants also assert that Plaintiff has not put forth facts suggesting that the decision to terminate her was motivated by her race.

In order to file a discrimination claim under Title VII, the plaintiff must timely file a charge alleging discrimination with the EEOC. *Pacheco v. Mineta*, 448 F. 3d 783, 788 n. 6 (5th Cir. 2006). However, in Louisiana, a plaintiff who fails to file a discrimination charge with the EEOC may still file a discrimination claim under state law. Moreover, state law discrimination claims are analyzed under the same framework as discrimination claims arising under federal law, namely, the

*McDonnell Douglas* burden-shifting approach. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* approach, the plaintiff must first set-out a prima facie case of discrimination. *Id*. To do so, the plaintiff must establish that (1) she is a member of protected class; (2) she was qualified for her position; (3) she suffered adverse employment action; and (4) the employer intentionally treated others outside the protected class more favorably. *Nichols v. Loral Vaught Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). The United States Court of Appeals for the Fifth Circuit has interpreted "adverse employment action" to include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

To meet this burden, the evidence must be such that a reasonable fact finder could conclude that the employer consciously took the plaintiff's race into account in determining which employees to subject to adverse employment action. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir. 1991). However, a plaintiff cannot merely rely on conclusory allegations of discrimination. *Vance v. Union Planters Corp.*, 209 F.3d 438, 444 (5th Cir. 2000).

The Court finds that there are no genuine issues of material fact. As a threshold matter, only Defendants' decision to terminate McKenna is "an ultimate employment decision" which may give rise to a discrimination claim. *McCoy*, 492

F.3d at 559. Though McKenna may have been treated differently by having to attend an additional performance review or by being scrutinized more heavily in regards to her expense reports, these are plainly not "ultimate employment decisions" akin to hiring and firing. Multiple times during 2009, Marks and Baughman criticized McKenna's performance—whether for failing to meet with the preferred number of clients per week or for failing to timely submit data surveys. In fact, for the 2008 year, Marks rated her performance as barely more than "minimally effective," placing her in the bottom two New Orleans area Consultants (doc. 22, L). Finally, on October 18, 2009, Summit announced that it would be terminating McKenna and the lowest-rated Consultant as part of a company-wide reduction (doc. 22, ex. A).

The Court also finds that Defendants are entitled to judgment as a matter of law. A plaintiff simply cannot rely on conclusory allegations of discrimination in order to survive a motion to dismiss. *Vance*, 209 F.3d at 444. Plaintiff has produced absolutely no evidence suggesting that Summitt's decision to fire her was motivated by racial animus. Instead, the evidence suggests that McKenna was terminated for her failure to meet or just barely meeting the company's objectives. Summit simply terminated the two lowest-scoring Consultants in their New Orleans office, McKenna and another Caucasian, female.

## II. Gender Discrimination Claim

Plaintiff asserts that Summit discriminated against her on account of her gender (doc. 1). Plaintiff alleges that (1) Marks questioned her as to why she

would return to work after having a baby and suggested that his wife would not do so; and (2) Summit terminated her on account of her gender.  Defendants assert that Marks' statements cannot support a claim for gender discrimination, and that Plaintiff has provided no evidence suggesting that Summit's decision to terminate her was motivated by her gender (doc. 22).

Title VII makes it unlawful for an employer to discriminate against an individual because of his or her gender.  42 U.S.C. § 2000e-2(a).  In addition, Title VII makes it unlawful for an employer to discriminate against an individual on the basis of conditions related to the individual's gender, such as pregnancy.  42 U.S.C. 2000e(k).  The Fifth Circuit uses the *McDonnell Douglas* standard for claims of gender discrimination.  *Bouvier v. Northrup Grumman Ship Sys. Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009).  That is, to establish a prima facie case of gender discrimination, the plaintiff must establish that (1) she is a member of protected class, (2) she was qualified for her position, (3) she suffered adverse employment action, and (4) the employer intentionally treated others outside the protected class more favorably.  *Id.*

The Court finds that there are no genuine issues of material fact.  Again, only Defendants' decision to terminate McKenna is "an ultimate employment decision" which may give rise to a discrimination claim.  *McCoy*, 492 F.3d at 559.  McKenna was one of seventy-two employees, including another female Consultant serving New Orleans, who were terminated in the company-wide reduction.

The Court also finds that Defendants are entitled to judgment as a matter of law. A plaintiff simply cannot rely on conclusory allegations of gender discrimination in order to survive a motion for summary judgment. *Vance*, 209 F.3d at 444. Plaintiff has produced absolutely no evidence suggesting that Summitt treated its female employees, or McKenna, less favorably than its male employees or that the decision to terminate McKenna was motivated by her gender or her pregnancy. Again, the evidence suggests that McKenna was terminated for her failure to meet or just barely meeting the company's objectives. Indeed, Summit terminated the two lowest-scoring Consultants in their New Orleans office.

### III. Family Medical Leave Act Claim

Plaintiff asserts that Summit retaliated against her by subjecting her to greater scrutiny when she returned from maternity leave (doc. 1). Plaintiff alleges that Summit did so by holding her to higher standards than the rest of its Consultants. Defendant asserts that Plaintiff was scrutinized because of her failure to meet company objectives and terminated due to her poor performance in the prior year (doc. 22).

Under the Family Medical Leave Act ("FMLA"), an employee is entitled to twelve weeks of leave during any twelve-month period if a serious health condition makes the employee unable to perform the typical functions of her position. 29 U.S.C. § 2612(a)(1)(D). To establish a prima facie case of retaliation under FMLA, the plaintiff must show that (1) she is protected under

FMLA; (2) she suffered an adverse employment decision; and (3) she was treated less favorably than employees who had not requested FMLA leave or the adverse decision was made because of her taking leave. *Comeaux-Bisor v. YMCA of Greater Houston*, 290 F. App'x 722, 724-25 (5th Cir. 2008). If the plaintiff establishes a prima facie case of FMLA retaliation, the burden shifts to the employer to provide a legitimate nondiscriminatory or non-retaliatory reason for the termination. *Id.* If the employer does so, the plaintiff must show by a preponderance of the evidence that the employer's stated justification is a pretext for discrimination or retaliation. *Id.*

The Court finds that there are no genuine issues of material fact. Again, only Defendants' decision to terminate McKenna is "an ultimate employment decision" which may give rise to a retaliation claim. *McCoy*, 492 F.3d at 559. Prior to being terminated Marks and Baughman each cited McKenna for failing to visit the minimum number of clients per week and failing to timely complete new account data surveys (doc. 22, ex. L). When she complained she was being held to a different standard, Chiles informed Marks and Baughman that she could not be compelled to meet with more clients than required by Summit's company-wide objections, but that her meeting only the minimum number of clients would be reflected negatively in her performance reviews. Indeed, Summit terminated its two lowest-scoring Consultants to the New Orleans area, including McKenna. McKenna was one of seventy-two employees who were terminated in the company-wide reduction.

The Court also finds that Defendants are entitled to judgment as a matter of law. Plaintiff has, at best, arguably established a prima facie case of FMLA retaliation. She was entitled to, and took, leave under FMLA because of her pregnancy, and she was thereafter treated less favorably than at least some of Summit's employees who did not take FMLA leave. However, Defendants have set forth a legitimate and non-discriminatory justification for their decision to terminate Plaintiff. Due to financial problems, Summit decided to shift away from services that required a large number of Consultants and underwent a company-wide reduction in workforce (doc. 22, ex. E). Summit terminated over seventy-two Consultants in its Southwest Region (doc. 22, ex. E). Plaintiff was among the worst-performing Consultants at Summit prior to her termination (doc. 22, ex. E). She was cited numerous times for failing to meet or barely meeting the company's objectives (doc. 22, ex. E). In addition, the Court finds that Plaintiff has not offered evidence upon which a reasonable jury could infer that Defendants' stated justification was simply a pretext.

### IV. Intentional Infliction of Emotional Distress Claim

Plaintiff asserts that Defendants' conduct gives rise to a claim for intentional infliction of emotional distress. Plaintiff asserts that Defendants held her to a higher level of scrutiny than her co-workers, despite that she had just given birth, and that this caused her significant emotional distress (doc. 24). Defendants assert that none of the cited conduct is sufficiently severe to support a claim for intentional infliction of emotional distress (doc. 22).

Under Louisiana law, to establish a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) she suffered severe emotional distress; (3) the defendant intended to cause severe emotional distress or the plaintiff's severe emotional distress was substantially certain to result from the defendant's conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). The Louisiana Supreme Court has stated that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society" and does not include mere "indignities," "annoyances," or "petty oppressions." *Id.*

The Court finds that there are no genuine issues of material fact. Upon returning from maternity leave, Defendants required Plaintiff to attend an irregularly scheduled performance review (doc. 22, ex. C). At the review, and at times thereafter, Defendants notified Plaintiff that she had not been meeting with the minimum number of clients or timely filling out her account data surveys (doc. 22, ex. C). However, Chiles assured her she could not be expected to surpass Summit's objectives, but that her failure to do so would be reflected in her performance reviews (doc. 22, ex. E). In addition, Defendants subjected Plaintiff's expense reports to greater scrutiny than other Consultants and ultimately terminated Plaintiff as part of a company-wide reduction in force.

The Court also finds that Defendants are entitled to judgment as a matter of law. The cited conduct is not sufficiently "extreme or outrageous" to support a claim for intentional infliction of emotional distress. Aside from terminating Plaintiff, Defendants' conduct is more akin to "indignities," "annoyances," or "petty oppressions" which are not sufficiently severe. *Id.* at 1209. And though termination arguably qualifies as extreme behavior, Plaintiff has offered no evidence suggesting that Defendants' terminated her with the intent to cause distress or with substantial certainty that it was to occur.

## **CONCLUSION**

Accordingly, the Court hereby GRANTS Defendants' Motion (doc. 22) for Summary Judgment. All of Plaintiff's claims are, therefore, dismissed.

Signed in Baton Rouge, Louisiana this 27th day of June, 2011.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**